## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-61395-CIV-LENARD/WHITE

### (05-60181-CR-LENARD)

**GOMEZ ACCIME,**

**Movant,**

**v.**

**UNITED STATES OF AMERICA,**

**Respondent.**

_____/

FILED by SAS D.C.

JAN 1 3 2010

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

### ACCIME'S TRAVERSE TO GOVERNMENT'S RESPONSE

### PURSUANT TO TITLE 28, U.S.C., SECTION 2255

The Defendant, Gomez Accime, Pro Se Movant, hereby files this Traverse

to the Government's Response and states:

### STATEMENT OF THE CASE

The Defendant incorporates by reference his statement of the case as filed

with his Section 2255 motion.

### STATEMENT OF FACTS

The Defendant incorporates by reference his statement of the facts as filed

with his Section 2255 motion.

## MEMORANDUM OF LAW

Movant Accime seeks relief based on the following claims:

1. Counsel failed to raise any meaningful arguments concerning hearsay violations;

2. The government did not prove that movant knowingly committed fraud through the submission of documents;

3. The government failed to produce material evidence in violation of Jencks v. United States, 353 U.S. 657 (1957); and

4. The imposition of enhancements according to the Sentencing Guidelines constituted illegal sentencing procedure.

As set forth below, Accime is entitled to relief on these claims.

## COUNSEL FAILED TO RENDER EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT ENTITLEMENTS

Defendant Accime asserts that counsel failed to raise any meaningful challenges against the proffers of hearsay by government witnesses at trial. In support, Accime states that "certain statements and representations by witnesses created the impression to the jury that Accime acted in a knowingly felonious

manner" (CR-DE 157, p. 6). Accime further complains that "[n]umerous witnesses which could have contravened such statements were not called" (id.). Accime states that counsel was also ineffective for failing to raise objections on the basis of Crawford v. Washington, 541 U.S. 36 (2004) (id.).

Accime notes that the issue was raised on appeal, but the Eleventh Circuit refused to consider
it because it had not been raised before the district court (id.). Because Accime complains that that the reason he did not raise any of the grounds in this §2255 motion previously was due to ineffective assistance of counsel (CV-DE 1, p. 10, No. 13).

Movant Accime avers that Counsel was ineffective for failing to properly raise this issue in the district court and on appeal. Movant claims that he raised the question with counsel to present the issues and evidence and was ignored. Movant proffers that since counsel did not preserve the issue at the lower court level, and therefore was prohibited from presentation to the Court of Appeals, counsel was ineffective to the point of depriving effective representation within the requirements of the Sixth Amendment. Defendant Accime claims that he has met the standard for reviewing ineffective assistance of counsel claims as found in the two pronged test of Strickland v. Washington, 466 U.S. 668 (1984).

First, the defendant has shown that counsel's performance was deficient in the failures of preserving the record and presenting the issues. On this basis counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Second, movant avers that the failures of counsel constituted a deficient performance which prejudiced the defense and that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

As previously noted by the government, the Eleventh Circuit refused to consider the merits of the Crawford violations on direct appeal because movant had not raised that challenge below in the trial court. See Accime, 278 Fed.Appx. at 900, fn. 2. Regardless of the government's new claim that the issue has no validity, the fact remains that the issues have not been reviewed by this court nor the Court of Appeals due to counsel's failure of presentation. At this point the facts are in dispute and an evidentiary hearing is warranted.

Defendant Accime would agree that the Eleventh Circuit has recognized that, in view of the rules and presumptions set forth in Strickland, "the cases in which habeas petitioners can properly prevail on the ground of ineffective

assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506,

1511 (11th Cir. 1995), quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).

Defendant Accime opines that his case is the exception and warrants

review. This is certainly a case where the adversarial process at trial, in fact, failed

to work adequately. See Waters v. Thomas, 46 F.3d 1506, 1511-12 (11th Cir.

1995) 1511-12 (11th Cir. 1992). See also Sullivan v. Deloach, 459 F.3d 1097,

1108 (11th Cir. 2006) (the purpose of ineffectiveness review is not to grade

counsel's performance, but to determine whether that performance fell within the

broad range of what might be a reasonable approach to trial).

Defendant Accime proffers that his sentence and conviction are directly

related to ineffective and decrepit counsel and served to be an egregious violation

of his right to effective representation. The Supreme Court has held that *any*

increase in the amount of prison time imposed on a defendant which is attributable

to attorney error establishes prejudice. Glover v. United States, 513 U.S. 198

(2001). Gomez Accime claims that his counsel failed to raise any meaningful

defenses against the proffers of hearsay by the government and such failure

constituted ineffective assistance of counsel within the parameters of the Sixth

Amendment.

During the trial, certain statements and representations by witnesses created

the impression to the jury that Accime acted in a knowingly felonious manner. The government claims that Defendant Accime fails to identify which witnesses counsel should have called to testify to contravene government witnesses' testimony, or specifically what the substance of that testimony might have been.

The government's proffer merely confirms Defendant Accime's position of ineffective counsel. For example, counsel failed to interview any of the thousands of customers aided by Defendant Accime  The government claims thousands of victims, but defense counsel failed to interview any of those proposed witnesses. Numerous witnesses which could have contravened statements against the interests of Defendant Accime were not called. Further, trial counsel failed to raise any arguments as to confrontation of witnesses and potential witness in defense of the defendant under Crawford v. Washington, 541 U.S. 36 (2004).

## STATE OF MIND

Defendant Accime contends that the government did not prove that movant knowingly committed fraud through the submission of documents. In support, movant alleges that the "government retained certain documents going to the essence of Accime's innocence and then destroyed the documents which would have proved that Accime did not knowingly commit a crime in this case. The central part of this issue concerns Accime's state of mind at the time of his alleged

offense" (CR-DE 157, p. 7). Defendant Accime further contends that "[t]he failure of defense counsel to investigate and insist upon the production of documents concerning communications between CIS and HACHO emasculated the defense and constitutes ineffective assistance of counsel" (id.). It is without question that counsel has a affirmative duty to investigate any mitigation aspects which may influence the guilt or innocence of his client.

## DOCUMENTS NOT PRODUCED BY THE GOVERNMENT CONSTITUTES MISCONDUCT AS WELL AS INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant Accime claims that the government failed to produce material evidence in violation of Jencks v. United States, 353 U.S. 657 (1957). Accime states that, as a result, counsel was unprepared for trial and ineffective for "failing to demand production of communications between the Citizenship and Immigration Service (CIS) and HACHO, the production of which would have proved defense arguments regarding hearsay evidence" (CR-DE 157, p. 9). Accime further alleges that in this case, the government failed to produce for review and trial certain communications from CIS that were essential to Accime's defense. The communications from CIS that were retained by the Government and apparently deemed unavailable to the Defense under the Rules of Evidence (Rule

402 Relevant Evidence) were absolutely essential to defense trial. The CIS

documentation would have shownthat Accime was not guilty of mail fraud (18

U.S.C. §1341) nor of making false statements, (18 USC §1546).

Further, the information would have demonstrated that there was never the

slightest indication or proof of any mens rea in Accime's activities regarding

HACHO. For example, Papers set to Louis Deckle from the CIS would have

demonstrated clearly that a government agency itself advised HACHO (and its

principals) on the techniques, i.e. codes, to be used

in completing forms I-765 (Application for Employment Authorization) and I-797

(Notice of Action), receipt of which would enable the applicant to use the (I-797)

to apply for a Florida driver's license. The absence of this material evidence

portrayed a one-sided view of the Defendant's activities and tainted the

presentations to the jury. (CR-DE 157, p. 10-11).

The government claims that because Accime did not raise these issues

previously, he is barred from raising them in this§2255 motion. This is precisely

the point of Accime's claim of ineffective counsel whose failures to investigate

and review material evidence resulted in the actual prejudice resulting from the

alleged errors, or a fundamental miscarriage of justice. Holladay v. Haley, 209

F.3d 1243, 1254 (11th Cir. 2000); United States v. Nyhuis, 211 F.3d 1340, 1344

(11ᵗʰ Cir. 2000). A review of the claims concerning counsel's failure to raise

should be significant and constitute enough basis to have affected the outcome of

the case. Holladay v. Haley, 209 F.3d at 1254; United States v. Nyhuis, 211 F.3d

at 1344. Because these claims have never been reviewed due to the failure to

produce the documents required by the governmental files, the government cannot

offer its opinion that said claims are meritless.

## ACCIME CLAIMS THAT THE IMPOSITION OF ENHANCEMENTS ACCORDING TO THE GUIDELINES CONSTITUTED ILLEGAL SENTENCING PROCEDURE AND HE IS ENTITLED TO RESENTENCING WITHOUT THE ENHANCEMENTS CONSIDERED BY THE COURT

The Accime sentencing included a detailed evaluation of the sentencing

guidelines and the imposition of enhancements "mandated" by the sentencing

guidelines to determine the sentencing ranges. Accime claims that the Guidelines

are not only not mandatory on sentencing courts; they are also not to be presumed

reasonable. The sentence imposed by the court were deemed reasonable by the

court and such presumption constitutes error. Because the Court's sentencing

procedure did not comply with neither the Fifth, Sixth or Eighth Amendments,

Defendant Accime's conviction as to any enhancements and/or departures which

increased the punishment is invalid.

## RECENT BACKGROUND DECISIONS

Accime is asserting his motion, in part, on Supreme Court decisions as of January 12, 2005 when the Supreme Court issued a controversial ruling that federal district courts were not required to impose precise sentences recommended by the U.S. Sentencing Guidelines. See: <u>United States v. Booker</u>, 543 U.S. 220 (2005). The Court said the Guidelines were advisory in nature, and not mandatory sentencing requirements. Id., at 245-46. Since the <u>Booker</u> decision the United Stated Supreme Court has set forth several amplifying decisions on which Accime is basing his request for habeas relief.

In the recent case of <u>United States v Moore</u>,  U.S. District Court Judge Linda Reade, Northern District of Iowa, on November 21, 2005, imposed a term of 188 months of confinement and six years of supervised release on James Eric Moore following a jury conviction for possession with intent to distribute crack cocaine. Relying upon the recent <u>Booker</u> decision, Moore asked Judge Reade to impose a sentence below the one recommended by the Guidelines.

The judge replied: "With regard to the crack and powder cocaine difference, that is the law. I'm applying the law as it currently stands. If that is going to be changed, that is a congressional matter. Congress is the one who looks at the

guidelines and decides whether or not they should be put in—in force ... It isn't

the judges. It's the lawmakers, and I have taken an oath to apply the law, and

that's what I will do in this sentencing."

Judge Reade's sentencing decision was contrary to the <u>Booker</u> rationale.

But she was not alone in her judicial reasoning and many other federal judges

shared her judicial sentiment. In fact, a little more than a year later an en banc

Eighth Circuit Court of Appeals upheld the judicial reasoning of Judge Reade in

the case of Steven Spears by saying that neither Booker nor the sentencing

mandate of 28 U.S.C. § 3553(a) authorized federal district court judges to "reject"

the 100:1 crack/powder cocaine ratio set forth in the Guidelines. See: <u>United

States v. Spears</u>, 469 F.3d 1166, 1178 (8th Cir. Dec. 5, 2006)[Remanding a district

court's decision that categorically rejected the 100:1 crack/powder cocaine ratio

and instead utilized a 20:1 ratio to impose a 240-month sentence for possession of

crack and powder cocaine].

The en banc <u>Spears</u> precedent paved the way for the Eighth Circuit to

uphold Judge Reade's sentencing decision in the James Eric Moore case. See:

<u>United States v. Moore</u>, 470 F.3d 767, 770 (8th Cir. 2006).

Both <u>Spears</u> and <u>Moore</u> applied to the U.S. Supreme Court for writs of

certiorari challenging the Eighth Circuit rulings in their cases. They based their

appeals on the Booker rationale. While their requests for certiorari review were

pending, the Supreme Court on December 10, 2007 handed down <u>Kimbrough v.</u>

<u>United States</u> which overruled the longstanding legal premise employed by Judge

Reade that federal district courts had to apply provisions of the Guidelines that

made one gram of crack cocaine the equivalent of 100 grams of powder cocaine

(more commonly known as the "100:1 ratio") for sentencing purposes. See: 128

S.Ct. 558, 575, 169 L.Ed.2d 481 (207).

In the wake of <u>Kimbrough</u>, the Supreme Court on January 7, 2008 granted

both Spears' and Moore'*s* certiorari applications with the same identical language:

On petition for writ of certiorari to the United States Court of Appeals for the

Eighth Circuit. Motion of petitioner for leave to proceed in forma pauperis and

petition for writ of certiorari granted. Judgment vacated, and case remanded to the

United States Court of Appeals for the Eighth Circuit for further consideration in

light of <u>Kimbrough v. United States …" See: Spears v. United States, 128 S.Ct.</u>

<u>858, 169 L.Ed.2d 709 (2008); Moore v. United States, 128 S.Ct. 858, 169 L.Ed.2d</u>

<u>709 (2008).</u>

Two months after the Supreme Court's remand, the Eighth Circuit, on

March 6, 2008, once again upheld Judge Reade's sentencing decision in the James

Eric Moore case, without any new briefing on the Kimbrough implications, saying

that "[a]s there was then no circuit authority to the contrary, we presume the district court was aware that Booker granted it discretion to vary downward [from the Guidelines] based upon the impact of the crack guidelines on this defendant, but elected not to exercise its discretion." See: United States v. Moore, 518 F.3d 577, 580 (8th Cir. 2008). After the Eighth Circuit upheld Moore's sentence for the second time, the appeals court on June 23, 2008 handed down a second en banc decision in the Steven Spears case that paid some judicial homage to Kimbrough by rejecting its previous precedent holding that the 100:1 crack/powder cocaine ratio was mandatory despite Booker and holding that this particular Guideline, like all the Guidelines, are "advisory only." But appeals court nonetheless concluded that the district court had incorrectly varied from the 100:1 ratio when it substituted a 20:1 ratio to sentence Spears because the sentence was not based on an individualized, case-specific evaluation of the facts or the defendant pursuant to § 3553(a). The appeals court held that while a district court had the authority to determine the 100:1 ratio could result in a sentence harsher than necessary, it could not categorically reject the ratio as set forth by the Guidelines. See: United States v. Spears, 533 F.3d 715, 717 (8th Cir. 2008) [Spears II].

Moore and Spears once again applied to the U.S. Supreme Court for certiorari review. This time Moore proceeded pro se and his application was

supported by the U.S. Attorney representing the Government. The parties agreed
that the Eighth Circuit had erred with the cursory attention it had paid to
Kimbrough on remand. The Supreme Court on October 14, 2008 adopted the
position taken by Moore and the Government and remanded his case a second time
for sentencing reconsideration:

On January 21, 2009, the Supreme Court also granted a second time
certiorari relief to Steven Spears,  See: Spears v. United States, 2009 U.S. LEXIS
864 (2009). In a more detailed analysis, the Court made its Kimbrough holding
unmistakably clear to the Eighth Circuit:

"On remand, the Eighth Circuit again reversed Spears' sentence and remanded for
resentencing. It concluded, again, that the District Court 'may not categorically
reject the ratio set forth by the Guidelines,' and 'impermissibly varied by replacing
the 100:1 ratio quantity ratio inherent in the advisory Guidelines range with a 20:1
quantity ratio.' Spears again petitioned for a writ of certiorari. Because the Eighth
Circuit's decision on remand conflicts with our decision in Kimbrough, we grant
the petition for certiorari and reverse.

In Kimbrough, we held that "under Booker, the cocaine Guidelines, like all
other Guidelines, are advisory only,' and that 'it would not be an abuse of
discretion for a district court to conclude when sentencing a particular defendant

that the crack/powder cocaine disparity yields a sentence greater than necessary to achieve Section 3553(a)'s purpose, even in a mine-run case.' The correct interpretation of that holding is the one offered by the dissent in Spears II:

"The [Supreme] Court thus established that even when a particular defendant in a crack cocaine case presents no special mitigating circumstances – no outstanding service to country or community, no unusually disadvantaged childhood, no overstated criminal history score, no post-offense rehabilitation – a sentencing court may nonetheless vary downward from the advisory guideline range. The court may do so based solely on its view that the 100-to-1 ratio embodied in the sentencing guidelines for the treatment of crack cocaine versus powder cocaine creates an unwarranted disparity within the meaning of § 3553(a), and is at odds with § 3353(a). The only fact necessary to justify such a variance is the sentencing court's disagreement with the guidelines – its policy view that the 100-to-1 ratio creates an unwarranted disparity.'

"Kimbrough considered and rejected the position taken by the [majority] Eighth Circuit below. It noted that a district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case outside the heartland to which the Commission intends individual Guidelines to apply. The implication was that an 'inside the heartland departure

(which is necessarily based on a policy disagreement with the Guidelines and necessarily disagrees on a categorical basis) may be entitled to less respect.' Our opinion said, however, that the 'crack cocaine Guidelines ... present no occasion for elaborative discussion of this matter because those Guidelines do not exemplify the Commission's exercise of its characteristic institutional role.' Kimbrough thus holds that with respect to the crack cocaine Guidelines, a categorical disagreement with and variance from the Guidelines is not suspect.

"That was indeed the point of Kimbrough: a recognition of district courts' authority to vary from the crack cocaine Guidelines based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case. The latter position was already established pre-Kimbrough [Booker], and the Government conceded as much in Kimbrough. That the Government did not prevail in Kimbrough proves that its concession – 'that a district court may vary from the 100:1 ratio if it does so based on the individualized circumstances of a particular case' – understated the extent of the district courts' sentencing discretion.

"In drawing a distinction between 'individualized, case-specific' consideration of the Guidelines' ratio and categorical rejection and replacement of that ratio, the Eighth Circuit relied in part on the following passage from

Kimbrough:

"'The [district] court did not purport to establish a ratio of its own. Rather, it appropriately framed its final determination in line with § 3353(a)'s overearching instruction to impose a sentence sufficient, but not greater than necessary to accomplish the sentencing goals advanced in § 3353(a).'

This says that it was 'appropriate' for the District Court in Kimbrough not to specify what ratio it was using, but merely to proceed with § 3353(a) analysis. The Eighth Circuit read that to mean that district courts, in the course of their individual determinations, may not categorically disagree with the Guidelines ratio, and (consequently) may not substitute their own ratio for that of the Guidelines. If it meant that, our vacating of the Eighth Circuit's judgment in Spears I would have been inexplicable, because that supposedly impermissible disagreement and substitution was precisely the reasons for Spears I's reversal of the District Court. As a logical matter, of course, rejection of the 100:1 ratio, explicitly approved by Kimbrough, necessarily implies an adoption of some other ratio to govern the mine-run case. A sentencing judge who is given the power to reject the disparity created by the crack-to-powder ratio must also possess the power to apply a different ratio which, in his judgment, corrects the disparity. Put simply, the ability to reduce a mine-run defendant's sentence permits the adoption

of a replacement ratio.

To the extent the above quoted language has obscured Kimbrough's holding, we now clarify that district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines ...

The alternative approach – adopted by the Eighth Circuit – would likely yield one of two results. Either district courts would treat the Guidelines' policy embodied in the crack-to-powder ratio as mandatory, believing that they are not entitled to vary based on 'categorical' policy disagreements with the Guidelines, or they would continue to vary, masking their categorical policy disagreements as 'individualized determinations.' The latter is institutionalized subterfuge. The former contradicts our holding in Kimbrough. Neither is an acceptable sentencing practice." id..

Moore and Spears made one thing crystal clear: a district court has unfettered discretion to reject the 100:1 crack/powder cocaine ratio for any reason it deems appropriate. That message was certainly delivered to the Eighth Circuit in no uncertain terms.

Following Moore and Spears, the Supreme Court decided Nelson v United States 555 U.S. __ (2009). In this case Lawrence Nelson was convicted of one

count of conspiracy to distribute and to possess with intent to distribute more than

50 grams of cocaine base. See 21 U. S. C. §846.The District Court calculated

Nelson's sentencing range under the United States Sentencing Guidelines, and

imposed a sentence of 360 months in prison (the bottom of the range). During

sentencing, the judge explained that under Fourth Circuit precedent, the

Guidelines are considered presumptively reasonable," so that 'unless there's a

good reason in the [statutory sentencing] factors . . . , the Guideline sentence is the

reasonable sentence.'" The United States Court of Appeals for the Fourth Circuit

affirmed Nelson's conviction and sentence.

On  remand and without further briefing, the Fourth Circuit again affirmed

the sentence.The court acknowledged that  Rita, while courts of appeals "may

apply a presumption of reasonableness to a district court sentence that reflects a

proper application of the Sentencing Guidelines," 551 U. S., at 347, "the

sentencing court does not enjoy the benefit of a legal presumption that the

Guidelines sentence should apply," id., at 351.

Instead, the sentencing court must first calculate the Guidelines range, and

then consider what sentence is appropriate for the individual defendant in light of

the statutory sentencing factors, 18 U. S. C. §3553(a), explaining any variance

from the former with reference to the latter. Nonetheless, the Fourth Circuit upheld

the sentence, finding that the District Court did not treat the Guidelines as "mandatory" but rather understood that they were only advisory. Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable. In <u>Rita</u> the Court said. . . [T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply. 551 U. S., at 351. And in <u>Gall v. United States</u>, 552 U. S. ___ (2007), we reiterated that district judges, in considering how the various statutory sentencing factors apply to an individual defendant, "may not presume that the Guidelines range is reasonable.".

The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable. And that constitutes error. Because the Court's sentencing procedure did not comply with neither the Fifth, Sixth or Eighth Amendments, Defendant Accime's conviction as to any enhancements and/or departures which increased the punishment is invalid.

This case concerns a sentence that was increased based on facts found by a preponderance of the evidence rather than beyond a reasonable doubt. On the basis of the foregoing,  the district court could not presume that the 96 month  sentence was reasonable. As noted above, the court calculated an advisory guidelines range of 168 to 210 months' imprisonment, ultimately imposing a sentence below that

range after considering the 18 U.S.C. § 3553(a) factors. However, the sentence

contained invalidly considered factors which enlarged the sentencing. Because

defense counsel failed to provide a meaningful argument against the imposed

enhancements, the sentence was unreasonable but the lack of argument failed to

allow appropriate appellate review. See Gall v. United States, 128 S. Ct. 586, 594

(2007) (directing appellate courts to review the reasonableness of sentences under

abuse-of-discretion standard).

RETROACTIVITY OF UNITED STATES V MOORE (2008)

In Tyler v. Cain, 533 U.S. 656 (2001), the United States Supreme Court

held that a new rule of criminal procedure may be made retroactive through a

series of that Court's cases:

> Justice Breyer observed that the United States Supreme Court
> can make a rule retroactive over the course relevant caselaw.
> With the right combination of holdings, the Court could
> do this .... Multiple cases can render a new rule retroactive
> only if the holdings in those cases necessarily dictate
> retroactivity of the new rule.

Tyler, 533 U.S. at 666.

In her concurrence, Justice O'Connor explained that the Court "'ma[k]es' a new rule retroactive through multiple holdings that logically dictate the retroactivity of the new rule." Tyler, 533 U.S. at 668-69 (O'Connor, J., concurring). Logic compels the retroactive application of Moore, given the Supreme Court's recognitions in Booker and Kimbrough, that the Moore decision implicates fundamental fairness.

The Supreme Court has repeatedly recognized the enhanced accuracy mandated by the rules in Winship and Mullaney. In Ivan V. v. City of New York, 407 U.S. 203, 205 (1972).

Consequently the decisions of the United States Supreme Court should be retroactively applied to Accime's case.

## EVIDENTIARY HEARING

In order to be entitled to an evidentiary hearing, the habeas Accime need only allege reasonably specific non-conclusory facts that if true, would entitled him to relief. Accime claims that the above allegations are not contradicted by the record and the claim is not frivolous. Aron v. United States, 291 F.3d 708 (11th Circuit 2002). On this basis, Accime moves for an evidentiary hearing pursuant to 28 United States Code 2255, Rule 8; if this court deems such to be equitable and just. In addition, Accime moves for appointment of new counsel pursuant to 18

U.S.C. 3006A(g).

## TRANSCRIPTS

Accime moves this court for a grant of transcripts and documents at no charge to be provided by the Clerk of Court and/or the respondent pursuant to 28 U.S.C. 2250.

## FINAL CONCLUSION AND REQUEST FOR RELIEF

Accime is moving for a finding that the judgement was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such judgement, or that the sentence was in excess of the maximum authorized by law or sentencing guidelines, or is otherwise subject to collateral attack.

Gomez Accime asserts that he is entitled to prevail on a claim of being innocent of or ineligible for the sentence he received, and that he has shown constitutional error invalidating all of the aggravating circumstances upon which the sentence was based. In light of the above, Accime Accime believes that he has demonstrated a valid basis of the deprivation of constitutionally protected Fifth Amendment Due Process, the excess punishment in relation to an invalid sentencing process and ineffective counsel within the context of the Sixth Amendment, and a sentence in excess of the authorized maximum in violation of

the Eighth Amendment of the United States Constitution.

Wherefore Gomez Accime, Pro Se  Defendant,  moves this court for a grant

of vacatur or set aside of his conviction, and for this court to effectuate correction,

modification, or setting of retrial, and any other relief which this court may deem

equitable and just.

Submitted;

Gomez Accime
65458-004
FCI Jesup
2680  Highway 301 South
Jesup Georgia 31599
Pro Se Defendant/Movant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY **ACCIME'S TRAVERSE TO GOVERNMENT'S RESPONSE PURSUANT TO TITLE 28, U.S.C., SECTION 2255** was sent, with U.S. First Class postage, to the Clerk of Court for the United States District Court for the Southern District of Florida, 500 East Broward Blvd. Fort Lauderdale, Florida 33301 and a copy to the United States Attorney's Office, 500 East Broward Blvd. Fort Lauderdale, Florida 33301 this  22  day of  Dec. , 2009. I Affirm that the foregoing is true and correct under the laws of perjury.

Submitted,

Gomez Accime,
Pro Se Defendant/ Movant